UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| BLUE SKY TOWERS III, LLC<br><br>*Plaintiff*,<br><br>- *v* –<br><br>APPEALS BOARD of the TOWN OF NOBLEBORO, MAINE, the PLANNING BOARD of the TOWN OF NOBLEBORO, MAINE and TOWN OF NOBLEBORO, MAINE<br><br>*Defendants*. | **COMPLAINT AND REQUEST FOR EXPEDITED REVIEW UNDER 47 U.S.C. § 332(c)(7)(B)(v)**<br><br>**Civil Action No.**<br>_____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT**

Plaintiff BLUE SKY TOWERS III, LLC ("Blue Sky" or "Plaintiff") on behalf of itself

and for the benefit of Cellco Partnership d/b/a Verizon Wireless ("Verizon"), by and through its

attorneys Nixon Peabody LLP, hereby submits this Complaint against defendants APPEALS

BOARD OF THE TOWN OF NOBLEBORO, MAINE (the "Appeals Board"), PLANNING

BOARD of the TOWN OF NOBLEBORO, MAINE (the "Planning Board"), and the TOWN OF

NOBLEBORO, MAINE (the "Town," and collectively with the Appeals Board and the Planning

Board, the "Defendants"), and respectfully alleges as follows:

**Nature of the Action**

1.      This action arises out of the Appeals Board's unlawful denial of Plaintiff's application for

a variance to construct a personal wireless communications facility for Verizon, a wireless

telecommunications licensee of the Federal Communications Commission ("FCC"), in order to

remedy a significant gap in coverage in Verizon's wireless network along Route 32 (Winslows

Mills Road/Waldoboro Road), Upper E. Pond Road and E. Pond Road, Eugley Hill Road/N. Nobleboro Road, and the surrounding roads, residences, businesses, and recreational areas around The Narrows of Damariscotta Lake in the Town of Nobleboro ("Nobleboro"). The proposed project consists of a 186-foot (plus a 6-foot lightning rod) wireless telecommunications facility, together with other site improvements (the "Project") located at 29 Starter Drive (Map/Parcel # 9-29-F) in the Town of Nobleboro, Maine (the "Property"). A copy of the Appeals Board's Findings of Fact and Decision dated January 27, 2026 (the "Written Decision") is attached to this Complaint as Exhibit 1.

2.      The Written Decision results in an effective prohibition of personal wireless services in northern Nobleboro. Accordingly, the Appeals Board's denial of Plaintiff's application violates §§ 253(a) and 332(c)(7)(B)(i)(II) of the federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "TCA"). In addition to a declaratory judgment, Plaintiff seeks an order from this Court directing the Planning Board to approve the site plan, record all approvals in the Lincoln County Registry of Deeds, and issue all necessary permits for the construction and operation of the Project.

3.      The Written Decision violates Section 332(c)(7)(B)(iii) of the TCA by denying the variance without the support of substantial evidence in the written record and effectively prohibiting the provision of telecommunications service and personal wireless services, all of which warrant a reversal of the denial with injunctive relief mandating that the Town issue all required approvals.

4.      The Appeals Board also abused its discretion and committed an error of law, and the Written Decision should be declared null and void.

5.      Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the TCA ("[t]he court shall hear and decide such action on an expedited basis"), Plaintiff asserts entitlement to expedited treatment of this Complaint.

## The Parties

6.      Plaintiff Blue Sky is a limited liability company organized under the laws of the State of Delaware and maintains its principal place of business at 352 Park Street, Suite 106, North Reading, Massachusetts 01864.

7.      Defendant Appeals Board is a duly authorized unit of the Town of Nobleboro, Maine, with an address of 192 US Highway 1, Nobleboro, Maine 04555.

8.      The Appeals Board has been delegated the authority, among other things, to grant variances under the Town of Nobleboro Land Use Ordinances last amended March 15, 2025 (the "Ordinance").

9.      Defendant Planning Board is a duly authorized unit of the Town of Nobleboro, Maine, with an address of 192 US Highway 1, Nobleboro, Maine 04555.

10.     The Planning Board has been delegated the authority, among other things, to review and approve site plans under the Ordinance.

11.     Defendant Town is a duly authorized municipality constituted and existing under the laws of the State of Maine, with an address of 192 US Highway 1, Nobleboro, Maine 04555.

12.     The Town, by and through the Town's selectmen, is responsible for appointing volunteer members to the Appeals Board and Planning Board, the adoption of and amendments to the Ordinance, and general oversight over land use development in Nobleboro.

**Jurisdiction and Venue**

13.     This Court has subject matter jurisdiction over this action pursuant to: (i) 47 U.S.C. § 332(c)(7)(B)(v) of the TCA, because Plaintiff has been adversely affected and aggrieved by the Appeals Board's actions in violation of 47 U.S.C. §§ 253(a) and 332(c)(7)(B)(i)(II), and (ii) 28 U.S.C. § 1331 because this is a civil action that presents federal questions arising under the TCA.

14.     This Court also has jurisdiction over this action under § 1337(a) of Title 28 of the U.S. Code because the federal statutes invoked herein are acts of Congress regulating commerce.

15.     This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. There is a live and justiciable controversy between the parties.

16.     This Court has personal jurisdiction over the Defendants because the Defendants are domiciled within the jurisdiction of the United States District Court, District of Maine, and the claims stated herein arose in the same jurisdiction.

17.     This Court also has jurisdiction under 42 U.S.C. § 1983, the Supremacy Clause and the Fifth and Fourteenth Amendments of the United States Constitution and supplemental jurisdiction with regard to the state law claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims stated herein arose in the judicial district for the United States District Court, District of Maine, and the Defendants are located in this District.

19.     This Complaint is timely filed within thirty days of issuance of the Written Decision denying the dimensional standards variance and undue hardship variance, pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

**The Important Federal Interests at Issue in This Case**

20.     As set forth in the TCA, Congress has declared a public need for wireless communication services such as "personal wireless services" to be deployed without delay to the public.

21.     By enacting the TCA, Congress intended to "provide for a pro-competitive, deregulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies to all Americans." H.R. Rep. No. 104-458, at 206 (1996) (Conf. Rep.); *See* 1996 U.S. Code Cong. and Adm. News, p. 10.

22.     The U.S. Supreme Court has recognized the key role the TCA plays in promoting the rapid deployment of infrastructure, noting that "[w]ireless telecommunications networks require towers and antennas; proposed sites for those towers and antennas must be approved by local zoning authorities. In the [TCA], Congress imposed specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities. . . ." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 293 (2013) (internal quotations omitted) ("[t]he TCA implements Congress' intent to encourage the rapid deployment of wireless telecommunications").

23.     Congress implemented specific limitations on the traditional authority of state and local governments, such as requiring local municipalities to act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time, to "stop local authorities from keeping wireless providers tied up in the hearing process through invocation of state procedures, moratoria, or gimmicks." *Masterpage Commc'ns, Inc. v. Town of Olive,* 418 F. Supp. 2d 66, 77 (N.D.N.Y. 2005) (internal quotations omitted). *See also Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 47 (1st Cir. 2009) ("The [TCA] stresses the need for speedily deploying telecommunications and seeks to get prompt resolution of disputes under

the Act . . . . to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies.").

24.     The FCC regulates the provision of personal wireless and telecommunications service to the public.

25.     The FCC grants licenses to providers of personal wireless services to use limited resources, frequencies, and spectrum allocated by the FCC for the provision of such services to the public.

26.     These essential wireless services are needed to place those living and passing through the area on equal footing with homes, businesses, and travelers throughout the state who have access to wireless communication and data services, in furtherance of the national policy goal that Congress and the FCC have repeatedly confirmed (i.e., to facilitate the rapid deployment of wireless access so as to ensure that all Americans have access to this critical utility).

27.     Moreover, the Nation's wireless infrastructure is increasingly replacing traditional wireline phones altogether. It is estimated that over 80% of all 911 calls in the nation are made from cell phones. *See* e.g., *9-1-1 Statistics* from NENA.org, the National Emergency Number Association https://www.nena.org/general/custom.asp?page=911statistics#.

28.     Section 332(c)(7) of the TCA, while preserving state and local authority over the placement, construction, or modification of wireless facilities, expressly preempts state or local governments from effectively prohibiting the provision of personal wireless services. *See Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) ("It is well-established in this Circuit that local zoning decisions that prevent the closing of significant gaps in the availability of wireless services violate the statute. This is true even where a local authority's denial of an

6

individual application pursuant to its own local ordinances is supported by substantial

evidence.") (internal citations omitted).

29.     The TCA imposes a number of procedural and substantive limitations on local zoning

decisions to ensure that those decisions do not frustrate the TCA's goals of promoting

competition, higher quality services, and the rapid deployment of new telecommunications

technologies.

30.     Section 253(a) provides that:

> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

31.     Section 332(c)(7)(B)(i) provides that:

> The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –
> (I)      shall not unreasonably discriminate among providers of functionally equivalent services; and
> (II)      shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

32.     The FCC further interpreted "effective prohibition" in its 2018 Declaratory Ruling and

Third Report and Order, *Accelerating Wireless Broadband Deployment by Removing Barriers to*

*Infrastructure Investment*, 33 FCC Rcd. 9088 (September 27, 2018), ruling that:

> a state or local legal requirement will have the effect of prohibiting wireless telecommunications services if it materially inhibits the provision of such services. We clarify that an effective prohibition occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service. This test is met not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities.

33.     Section 332(c)(7)(B)(iii) requires that:

> Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

34.    Section 332(c)(7)(B)(v) provides that:

> Any person adversely affected by any final decision or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis...

35.    The Project is a "personal wireless service facilit[y]" as defined by the TCA.

36.    Blue Sky is authorized to litigate the within claims because Verizon is the specific carrier for which it seeks to build the tower and thus it can "be discerned how the Appeals Board's decision will affect [Verizon's] ability to provide wireless services." *Vertex Towers LLC v. Town of York*, 2023 WL 4868097, at *10 (D. Me. 2023), citing 47 U.S.C. § 332(c)(7)(B)(v).

37.    This action is ripe for determination under the TCA and is timely filed.

### **Blue Sky**

38.    Blue Sky is a telecommunications infrastructure developer responsible for developing and managing personal wireless service facilities, as that term is defined in 47 U.S.C. §332(c)(7)(C)(ii) ("PWSF"), in strategic locations throughout New England and in many other areas of the country.

39.    Blue Sky will construct and own the Project for the benefit of Verizon, together with up to three (3) additional wireless telecommunications providers in the future.

**Verizon's Network**

40. Verizon is a federally licensed wireless telecommunications provider and is required to have in place a system of strategically deployed cell sites to satisfy its obligations under its FCC license and 47 C.F.R. § 27.14.

41. Wireless telecommunication devices operate by transmitting a very low power radio signal between the wireless telecommunication devices and an antenna mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic apparatus located near the antenna, known as a "base station," where it is connected to traditional telephone systems, and is then routed anywhere in the world. The antennas and base station are known as a "cell site."

42. Because of the low power, a cell site is capable of transmitting to and from wireless telecommunication devices only within a limited geographic area. This limited geographic area is called a "cell." A cell site must be located within a prescribed area in order to provide coverage for the entire cell.

43. Wireless telecommunications technology requires that cells overlap somewhat in order to provide uninterrupted service. When the wireless telephone user moves into a new cell, the transmission is automatically transferred to the cell site in the new cell. If there is no cell site in the new cell, there is no wireless telecommunications service.

44. Because each cell site must be placed in such a manner as to provide service within a particular cell, and so as to provide overlapping (but not duplicate) coverage with the existing or planned cells around it, there is limited flexibility as to where a cell site can be placed. Wireless telecommunications providers conduct a thorough engineering study, including using an elaborate computer program known as a "propagation study." A propagation study shows, based

on cell boundaries, topography and other factors, where a cell site needs to be located in order to provide wireless telecommunications coverage in a particular cell. The wireless telecommunication companies and RF engineers identify technologically feasible locations for the cell site within this identified area, known as a "search area."

45.     Verizon currently has service inadequacies in and around the northern portion of Nobleboro, specifically in the area surrounding the Project site (generally herein, the "Nobleboro Cell").

## Background Between the Parties

46.     Pursuant to Ordinance Chapter IV, Article III(C), wireless telecommunications facilities are permitted within Nobleboro (outside of the Shoreland District) upon the issuance of site plan approval from the Planning Board.

47.     However, pursuant to Ordinance Chapter IV, Article III(D)(1), the Town severely restricts wireless telecommunications facilities to locations within 300 yards of U.S. Route 1 (the "300-Yard Restriction").

48.     Plaintiff submitted the application to the Planning Board and the Appeals Board for site plan approval and a variance from the 300-Yard Restriction on June 10, 2025. The application provided a description of the Project, together with the following exhibits:

- Exhibit A: Completed Town-supplied application form;
- Exhibit B: Project description;
- Exhibit C: Applicable legal standards;
- Exhibit D: Proof of the Project's compliance with the applicable requirements for wireless telecommunications facilities set forth in the Ordinance;
- Exhibit E: Proof of the Project's compliance with the Town's requirements for a dimensional standards variance;
- Exhibit F: Radio frequency search ring justification (including propagation studies) and site selection analysis ("RF Report");

10

- Exhibit G: Proof of the Landowner's consent to the Application and deed;
- Exhibit H: Copy of Verizon's FCC Licenses;
- Exhibit I:  Tower structural design letter;
- Exhibit J:  Tower removal estimate;
- Exhibit K: Proof of compliance with Federal regulations;
- Exhibit L:  Co-location agreement;
- Exhibit M: 11″ x 17″ copy of the site plan;
- Exhibit N: Map showing the location of FCC Database structures over 150' within 5 miles of the Project Site; and
- Exhibit O: Proof of Blue Sky's capacity to complete the Project.

49.    Plaintiff contends that because the 300-Yard Restriction restricts the distance in which a telecommunication facility may be located, the required variance is a dimensional standards variance.  However, the Town Attorney stated that because the 300-Yard Restriction is more akin to an "overlay district," an undue hardship variance is required.  In any event, the type of variance is immaterial to the effective prohibition claim because the only thing that matters is that the Appeals Board denied whatever type of variance that was required to build the Project.[1]

50.    The June 2025 application, together with Plaintiff's additional application materials submitted on August 7, 2025; August 26, 2025; November 14, 2025; November 20, 2025; November 25, 2025; January 12, 2026; and January 27, 2026, are collectively referred to herein as the "Application."

**Planning Board Review**

51.    The Planning Board first considered the Application at its July 17, 2025, meeting. During this meeting, the Board reviewed the Application for completeness and requested additional

---

[1] Where the specific type of variance is relevant to the allegations herein, it is defined as that type of variance.  Otherwise, "variance" is used generally herein to describe whichever type of variance is required to construct the Project outside the 300-Yard Restriction.

11

information regarding the Project's visual and environmental impacts on the surrounding neighborhood.

52.    In response to the Planning Board's request, Plaintiff submitted additional application materials on August 7, 2025, which included the following exhibits:

- Exhibit P:    Photosimulation report; and
- Exhibit Q:    Explanation of the Project's minimal impact on traffic during construction and subsequent monthly or bi-monthly trips for routine maintenance.

53.    The Application was before the Planning Board again at its August 21, 2025, meeting. During the meeting, the Planning Board informed Plaintiff that to apply for a variance, they must use a Town-provided form obtainable only by contacting the Appeals Board.

54.    In response, Plaintiff submitted additional application materials on August 26, 2025, which included a completed application for a dimensional standards variance on the Town-provided form.

55.    The Planning Board conducted a site visit and held a public hearing on the Application on November 13, 2025. However, despite the Application having been pending for more than 150 days, the Planning Board failed to take any substantive action and requested Plaintiff to toll the 150-day "shot clock" under the FCC's Shot Clock Order (WT Docket No. 08-165) and set forth in 47 C.F.R. § 1.6003(c)(iv) until the Planning Board's December 18, 2025 meeting in order for the Planning Board to have an opportunity to consult with the Town Attorney on: (1) whether the Planning Board must first deny the site plan before the Applicant seeks a variance from the Appeals Board, or whether both approvals may proceed concurrently; (2) whether the 300-Yard Restriction violates the TCA; and (3) the legal and financial consequences of a violation of the TCA, which preempts municipal ordinances that effectively prohibit wireless service.

12

56.     Plaintiff consented to extending the shot clock until the Planning Board's December 18, 2025, meeting and requested to appear before the Appeals Board at the earliest opportunity.

57.     Shortly after the November Planning Board meeting, Plaintiff's attorney consulted with the Town Attorney regarding the three issues the Planning Board had raised. The Town Attorney advised that the Planning Board lacked authority to conditionally approve the site plan pending variance approval and/or table the application while the Appeals Board considered the Application. The Town Attorney indicated that the only course of action available to the Planning Board was to deny the site plan application.

58.     Had the Planning Board denied the site plan application, Plaintiff would have faced a difficult procedural posture. Under Ordinance Chapter XVI(S), Plaintiff would have been required to appeal the Planning Board's denial to the Appeals Board within thirty (30) days, while simultaneously pursuing the dimensional standards variance before that same board. In light of the Town's refusal to address the substantive and procedural tensions between the TCA and the Ordinance, Plaintiff elected to voluntarily withdraw the site plan application by a letter dated November 20, 2025, rather than compound the Town's misinterpretation of the TCA.

<strong><u>Appeals Board Review</u></strong>

59.     To provide the Town with clear guidance on the TCA, Plaintiff's counsel submitted a letter to the Town Attorney on November 25, 2025, detailing why: (1) Plaintiff cannot remedy the gap in reliable coverage in and around the Project site without a variance; (2) the Appeals Board should approve the Application because Plaintiff meets the requirements for a dimensional standards variance under Ordinance Chapter XVI(R)(6); (3) alternatively, if Plaintiff requires an undue hardship variance, the Appeals Board should approve the Application because Plaintiff meets the hardship variance requirements; and (4) in the event the Appeals Board denies either

or both variances, it should consider whether such denial is an effective prohibition in violation of the TCA.

60.     The Appeals Board considered the Application at its December 16, 2025, meeting (the "December 16th Meeting"). At the meeting, Plaintiff presented an overview of the Project and explained that: (a) the proposed location is necessary to address a coverage gap that cannot be served from within the 300-Yard Restriction, and (b) the TCA preempts local zoning restrictions that effectively prohibit wireless coverage.

61.     The Town Attorney outlined the applicable legal framework but noted uncertainty as to whether the Appeals Board has jurisdiction to consider the TCA. The Appeals Board also inquired into the purpose of the 300-Yard Restriction and determined that it was established to concentrate commercial development within the Route 1 economic corridor and preserve the rural character of the rest of the town.

62.     On January 12, 2026, Plaintiff submitted additional application materials, which included the following exhibit:

- Exhibit R:     RF report on the importance of site location for Verizon's coverage objectives and evidence of why siting the Project within the 300-Yard Restriction would fail to satisfy the coverage objectives of the Project and would instead provide service to entirely different geographic area in Nobleboro.

63.     On January 13, 2026, the Appeals Board held a public hearing on the Application (the "January 13th Meeting"). At the hearing, Plaintiff demonstrated that Verizon's FCC license requires it to provide wireless telecommunications coverage across its entire licensed area, which includes all of Nobleboro. Plaintiff also presented technical evidence and RF coverage maps demonstrating that terrain elevation differences would prevent a tower located within the 300-Yard Restriction from adequately addressing the significant coverage gap in the Nobleboro Cell.

64.     Plaintiff also explained why denying the variance would constitute an effective prohibition of wireless services in violation of the TCA and urged the Appeals Board to consider this issue, arguing that limiting effective prohibition claims to the courts alone is an inefficient use of town resources and places unnecessary burdens on the judicial system.

65.     During the public hearing, opponents raised concerns about the health effects of RF emissions, which is preempted by federal law;[2] skepticism regarding the existence of a significant service gap, based on individual anecdotal experiences; and concerns about the Project's potential impacts on property values and scenic views. The Appeals Board voted to hold the public hearing open until its January 27, 2026, meeting.

66.     On January 26, 2026, the Town Attorney issued a memorandum to the Appeals Board opining that it: (1) does not have jurisdiction to issue a dimensional standards variance from the 300-Yard Restriction because the 300-Yard Restriction is an "overlay zone" rather than a setback requirement, but recommended that the Appeals Board make factual findings regarding the applicable standards to eliminate the need for remand, should an appellate court conclude that the Appeals Board does have jurisdiction; (2) does not have jurisdiction to issue an undue hardship variance from the 300-Yard Restriction because a variance may not be granted for a change of use, but again recommended that the Appeals Board makes factual findings regarding the applicable standards to eliminate the need for remand; and (3) should not determine whether the 300-Yard Restriction creates an effective prohibition of wireless services because it is a federal law question that must be decided by the courts.

---

[2] Federal law expressly preempts the ability of a board, such as the Appeals Board, from basing a zoning decision, either in whole or in part, on the "environmental effects" of RF emissions, so long as the facility will be in compliance with FCC standards. 47 U.S.C. § 332(c)(7)(B)(iv).

15

67.     On January 27, 2026, Plaintiff submitted supplemental application materials to address the issues raised at the January 13th Meeting, which included the following exhibits:

- Exhibit S: Recent Impact Study for a wireless telecommunications facility in the Town of York, Maine, and an article from *Right of Way* magazine. In the Impact Study and magazine article, the appraisers concluded that, based on analysis of actual property sales adjacent to existing towers, there is no evidence that telecommunications towers adversely impact property; and

- Exhibit T: Dropped call data from Nobleboro evidencing that dropped calls in the area routinely exceed 2% (particularly in the summer months), with a peak of over 10% in November 2025.

68.     That evening, the Appeals Board convened to continue the public hearing and deliberate on the Application (the "January 27th Meeting"). The Town Attorney again advised that the Appeals Board should determine whether it has jurisdiction to grant either a dimensional variance or an undue hardship variance, as well as consider whether the Application met the standards for both variance types to preclude a potential court remand requiring such review.

69.     During its deliberations, the Appeals Board acknowledged that Plaintiff demonstrated a significant coverage gap, that no feasible alternative location exists within the 300-Yard Restriction to close that gap, and that Plaintiff would suffer economic injury if forced to relocate to an inadequate site. Nevertheless, the Appeals Board concluded that it lacked jurisdiction over both variance requests because the 300-Yard Restriction does not constitute a traditional "setback" but rather establishes an overlay district from which no variance may be granted. The Appeals Board further acknowledged that the Ordinance is "very problematic for any sort of future cell tower" development.

70.     Notwithstanding its jurisdictional finding, the Appeals Board also evaluated the substantive variance criteria for the record. The Board concluded that the Application failed to satisfy all variance criteria, finding that the proposed tower would alter the essential character of the neighborhood because it would be substantially taller than surrounding structures and trees.

16

71.     Notwithstanding the undisputed need for the Project and the compelling legal grounds for granting the Application, the Appeals Board unanimously denied the dimensional standards variance and, in the alternative, the undue hardship variance and declined to consider whether its decision constituted an effective prohibition of wireless service in violation of the TCA.

## Decision

72.     The Written Decision was issued after the meeting on January 27, 2026.

73.     In the Written Decision, the Appeals Board concluded that it lacked jurisdiction to grant a dimensional standards variance because the Application did not seek relief from lot area, lot coverage, frontage, or setback requirement.

74.     The Appeals Board further determined that, even if it had authority to grant a dimensional standards variance, it would deny the request. The Appeals Board found that strict application of the Ordinance would cause a practical difficulty, the practical difficulty is not the result of the action taken by Plaintiff, no other feasible alternative to a variance is available to Plaintiff, the granting of a variance will not have an unreasonably adverse effect on the natural environment, and the Property is not located in whole or in part within shoreland areas.

75.     However, the Appeals Board concluded that, without any written evidence in the record: (1) the need for the dimensional standard variance is not due to the unique circumstances of the property, and not the general condition of the neighborhood, because the existence of the 300-Yard Restriction, and not the Property itself, causes the need for a variance, and (2) the Project would produce an undesirable change in the character of the neighborhood because the proposed tower would be substantially taller than surrounding structures—including houses, barns, and garages—and would impair established views of nearby abutters.

17

76.    The Appeals Board further concluded that it lacked jurisdiction to grant a hardship variance because the Application did not seek relief from any category within the Board's purview—namely, minimum lot size, unoccupied space percentages, street or water frontage, or front, side, and rear yard setbacks.

77.    Alternatively, the Appeals Board found that, even if it had the authority to grant an undue hardship variance, it would deny the request. The Board found that no other feasible alternative to a variance is available to Plaintiff and the hardship is not the result of action taken by Plaintiff or a prior owner on or after March 23, 1991.

78.    However, the Appeals Board determined that, without any written evidence in the record: (1) the lot could yield a reasonable return without a variance because it is already developed for residential use; (2) the need for a variance arises from general conditions in the neighborhood and not unique circumstances of the lot; and (3) granting the variance would alter the essential character of the locality.

79.    The denial constitutes an "effective prohibition" under the TCA.

80.    The denial also ignores the facts in the record before it, is conclusory, is not supported by any evidence in the written record, and is an abuse of its discretion and an error of law.

## Irreparable Injury, Public Interest, and Balance of Hardships

81.    Plaintiff has demonstrated the need for injunctive relief herein, including an order directing the Planning Board to approve the site plan, record all approvals in the Lincoln County Registry of Deeds, and issue all necessary permits for the construction and operation of the Project.

82.    As a result of the Ordinance and the Appeals Board's actions, Blue Sky, Verizon, their customers, and the public will suffer irreparable harm absent the relief requested herein. The

18

injury to Verizon affects: (i) its ability to provide emergency services, businesses, and the general public with access to the modern, reliable wireless network they need, expect, and rely upon; (ii) the full use of its existing FCC license and business investments; and (iii) its customer goodwill and business reputation. The injury to Blue Sky similarly affects the goodwill of its wireless provider customers and its business reputation.

83.    The harm that Plaintiff has suffered and is suffering is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

84.    Moreover, the public interest in promoting competition in the telecommunications arena and the rapid deployment of this evolving technology – the express goal of the TCA – has been irreparably harmed and will continue to be irreparably harmed by the Town's unlawful acts.

85.    In addition, wireless telecommunications are an important component of public safety and emergency response systems and provide a vital alternative to traditional land lines during times of public crisis. By preventing Plaintiff from constructing the Project, which is necessary to provide reliable wireless services, the Town is causing irreparable harm to the public with deprivation or delay of reliable emergency communications.

86.    In contrast to the immediate and irreparable injury being suffered by Plaintiff, Verizon, and the public, the Town will suffer no significant injury if the Court issues the requested injunctive relief.

**Allegations Supporting Declaratory Relief**

87.    A present and actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties. Defendants' actions are in violation of the TCA and state law and Plaintiff is entitled to all of the approvals necessary to proceed with the Project.

88.    Plaintiff, Verizon, and the public have been and will continue to be adversely affected by

19

the Appeals Board's unlawful acts and any further delay to the Project.

89.    Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Plaintiff's rights and the Town's duties and authority.

## COUNT I

### Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)—Effective Prohibition

90.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

91.    Pursuant to 47 U.S.C. §§332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." (emphasis added).

92.    The First Circuit has established a two-step process for determining whether an effective prohibition has occurred. *Vertex Towers LLC v. Town of York*, 2023 WL 4868097, at *8 (D. Me. 2023). First, the Court must determine whether a "significant gap" in coverage exists, considering factors such as "the physical size of the gap, the area in which there is a gap, the number of users the gap affects, and whether all of the carrier's users in that area are similarly affected by the gaps." *Id.* Second, the Court must decide whether there are no feasible alternatives to close the gap in coverage other than the applicant's proposal such that the locality's decision constitutes an effective prohibition. *Id.* (citations and internal quotation marks omitted). *See also Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 40 (1st Cir. 2014) (stating that a plaintiff will prevail on an "effective prohibition" claim pursuant to § 332(c)(7)(B)(i)(II) if it shows that local authorities have rejected the only feasible plan to close a gap in coverage and "further reasonable efforts [to find another solution] are so likely to be fruitless that it is a waste of time even to try."); *Town of Amherst, N.H. v. Omnipoint Commc'ns*

*Enters., Inc.*, 173 F.3d 9, 14 (1st Cir. 1999) ("If the criteria or their administration effectively preclude towers no matter what the carrier does, they may amount to a ban 'in effect' even though substantial evidence will almost certainly exist for the denial.").

93.     Plaintiff firmly and irrefutably established that a significant coverage gap exists in the Nobleboro Cell.

94.     First, the RF Report enclosed as Exhibit F to the Application demonstrated Verizon's significant coverage gap in northern Nobleboro. Verizon's existing wireless facilities do not provide sufficient coverage and capacity in this area due, in large part, to the distance between existing sites, intervening topography, and user traffic demands. As detailed in the Application, this coverage gap affects areas along Route 32 (Winslows Mills Road/Waldoboro Road), Upper E. Pond Road, E. Pond Road, and Eugley Hill Road/N. Nobleboro Road—roadways that together carry an estimated 4,000 vehicles per day—as well as surrounding roads, residences, businesses, and recreational areas near The Narrows of Damariscotta Lake.

95.     Second, Attachments A and C in Exhibit F illustrated the extent of this gap. In these propagation maps, areas depicted in white have poor service quality, low data throughput, and a substantial likelihood of unreliable service. The remaining colors—green, yellow, and grey—represent scaled coverage levels, with green indicating the strongest signal and grey indicating the weakest. As shown in both attachments, a significant portion of the 700 MHz LTE and 2100 MHz LTE coverage is white or grey, well below the threshold necessary for Verizon to provide reliable service to the Nobleboro Cell.

96.     Third, dropped call data in Exhibit T demonstrated that dropped calls in the area routinely exceed 2%—particularly during the summer months—with a peak of over 10% in November 2025. This dropped call rate is substantial evidence that existing facilities do not adequately

address the need for service. *Green Mountain Realty Corp. v. Leonard*, 688 F.3d 40, 52 (1st Cir. 2012) (finding that a dropped call rate of 2–3% demonstrated a significant coverage gap). *See also Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 49 (1st Cir. 2009) (upholding the District Court's finding that signal levels below 84 dBm, and Omnipoint's nationwide reliability standard of 95%, constituted a gap in coverage); *Crown Castle Fiber LLC v. Town of Oyster Bay,* 2024 WL 1051171 (E.D.N.Y. 2024) (finding that evidence of dropped call rates ranging from 1.96 to 8% demonstrated a significant gap in coverage).

97.     Plaintiff also established that no feasible alternatives exist to close the coverage gap other than the Project.

98.     No existing towers are located in the Nobleboro Cell, and nearly all parcels surrounding the Property are unsuitable because they are undersized, lack street access, do not provide any vegetative buffer, and/or sit at a lower elevation that would necessitate a tower exceeding the Town's 195-foot height limit.

99.     As demonstrated in Exhibit F and confirmed by the applicant's radio frequency engineers, C2 Systems, during its testimony at the December 16th and January 13th Meetings, the Property is uniquely suited for a new tower due to its high elevation. An existing road provides access for most of the route, and although some tree removal will be necessary, none of the trees on the Property are old growth.

100.    Finally, the record makes clear that further efforts to identify an alternative site would be fruitless. As shown in Exhibit R in the Application, the Project cannot be located within the 300-Yard Restriction. The permitted area along Route 1 is situated too far south to address the significant coverage gap in northern Nobleboro, and any coverage provided by a facility within

the 300-Yard Restriction would serve an entirely different geographic area than that addressed by the Project.

101.    However, as the Appeals Board and Town Attorney have repeatedly stated, the Project is not permitted anywhere in Town except within the 300-Yard Restriction, and the Appeals Board has no authority to grant either a dimensional standards variance or undue hardship variance from this restriction. Accordingly, no alternative location outside the 300-Yard Restriction that could adequately fill the coverage gap has been identified, but, even if one were, it would be subject to the same prohibition. Further reasonable efforts to find another solution are therefore so likely to be fruitless that it would be a waste of time to try.

102.    Plaintiff provided extensive and unrefuted evidence that there is a significant gap in coverage in the Nobleboro Cell and there are no feasible alternatives to close the gap in coverage other than the Project. The Appeals Board's denial therefore constitutes an effective prohibition in violation of § 332(c)(7)(B)(i)(II) of the TCA. The Written Decision must be set aside and enjoined on that basis. Further, this Court should exercise its equitable power to issue an order that the Project is permitted at the Property and directing: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resubmission of its site plan application, and (2) the Town to issue all other local permits and approvals required to construct and operate the Project.

## COUNT II

**Violation of 47 U.S.C. § 253(a)–The Ordinance,
On Its Face and as Applied to the
Application, is an Effective Prohibition of Service**

103.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

104.    47 U.S.C. § 253(a) provides that "[n]o state or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." *See also ExteNet Sys., Inc. v. City of Cambridge,* 481 F. Supp. 3d 41, 56 (D. Mass. 2020) ("In the First Circuit, a plaintiff may meet its burden of demonstrating that a regulation effectively prohibits its ability to provide wireless services by showing the mere possibility of an effective prohibition, rather than by showing an actual effective prohibition.").

105.    If (1) wireless telecommunications facilities may only be sited within the 300-Yard Restriction; (2) there are significant coverage gaps that cannot be remedied within the 300-Yard Restriction; and (3) the Appeals Board lacks authority to grant variances, then the 300-Yard Restriction is a de facto blanket ban on the provision of wireless service across most of Nobleboro, in direct violation of federal law. *See Town of Amherst, N.H. v. Omnipoint Commc'ns Enters., Inc.*, 173 F.3d 9, 14 (1st Cir. 1999) ("Suppose, for example, that in denying an individual permit, the town zoning authority announces that no towers will ever be allowed or sets out criteria that no one could meet. The fact that the ban is embodied in an individual decision does not immunize it . . . . If the criteria or their administration effectively preclude towers no matter what the carrier does, they may amount to a ban 'in effect' even though substantial evidence will almost certainly exist for the denial.").

106.    The 300-Yard Restriction, the primary purpose of which was to limit growth and preserve the town's rural character, lacks any rational connection to legitimate municipal interests under the TCA, such as public safety, quality universal service, and/or consumer rights, and does not constitute an exercise of a local authority's right to manage public rights of way or receive compensation for their use. Construing this restriction to categorically prohibit all

telecommunications facilities beyond a narrow band along Route 1 produces an absurd result and is preempted by the TCA. *See Sprint Spectrum, L.P. v. Town of Ogunquit*, 175 F. Supp. 2d 77, 91 (D. Me. 2001) ("[a]n ordinance should not be construed to create absurd, inconsistent, unreasonable or illogical results.").

107.    Moreover, the Town's burdensome procedures and conflicting directives have effectively barred the deployment of telecommunications service in Nobleboro. Despite Plaintiff's good-faith submission in June 2025 and appearance before the Planning Board in July 2025, the Applicant was not informed that the Appeals Board required a specific variance form until August. The Town then compounded this oversight by issuing contradictory instructions: the Town initially directed the Applicant to proceed before the Planning Board, yet the Planning Board subsequently refused to act, claiming it could not proceed without prior action by the Appeals Board. This procedural impasse consumed months of valuable time under the FCC shot clock. Worse still, the Planning Board—the very body to which the Town initially directed the Applicant—never issued any decision on the application. Faced with this untenable situation, the Applicant was forced to withdraw from the Planning Board process and pursue the variance before the Appeals Board to avoid further delay and procedural quagmires.

108.    The 300-Yard Restriction and the Town's application review process have the effect of prohibiting Verizon's ability to provide interstate and/or intrastate telecommunications service in Nobleboro and are in violation of, and preempted by, § 253(a) of the TCA and must be set aside and enjoined on that basis. Further, this Court should exercise its equitable power to issue an order that the Project is permitted at the Property and directing: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of

Plaintiff's resubmission of its site plan application, and (2) the Town to issue all other local permits and approvals required to construct and operate the Project.

## Count III

### Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – the Appeals Board Denial Was Not Based on Substantial Evidence in the Written Record

109.   Plaintiff realleges and incorporates by reference all preceding paragraphs.

110.   Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." (Emphasis added).

111.   No evidence in the record supports the Written Decision.

112.   First, the Appeals Board's finding that it lacked jurisdiction to approve a dimensional standards variance or an undue hardship variance is a legal conclusion and categorical restriction. It is not a review of the Application nor analysis of evidence as required under § 332(c)(7)(B)(iii).

113.   Second, the Appeals Board's reasons for denying the dimensional standards variance were not supported by substantial evidence. The Appeals Board stated: (1)  the need for the variance is not due to the unique circumstances of the property because the existence of the 300-Yard Restriction, and not the Property itself, causes the need for a variance, and (2) the Project would produce an undesirable change in the character of the neighborhood because the proposed tower would be substantially taller than surrounding structures and would impair established views of nearby abutters.

114.   However, these findings ignore the substantial evidence in the written record that: (1) the property is unique because it is the only feasible location upon which the Project can be sited,

26

and (2) the Project will not pollute, create noise or vibration, create any significant increase in traffic, create any environmental problems, increase population density, create any demand on governmental facilities, nor have a detrimental effect on the use or market value of abutting properties. Accordingly, the record contains no evidence that the Project would adversely affect the neighborhood character. Moreover, the assertion that the Project would impair established views is conclusory and unsupported by any evidence that height alone would change the character of the neighborhood.

115.   The Appeals Board denied the undue hardship variance because: (1) the lot could yield a reasonable return without a variance because it is already developed for residential use; (2) the need for a variance arises from general conditions in the neighborhood and not unique circumstances of the lot; and (3) granting the variance would alter the essential character of the locality.

116.   The Appeals Board's finding of reasonable return rests on the flawed premise that any residential use satisfies the reasonable return standard, ignoring that a single residence on a 19-acre parcel falls far short of providing a reasonable rate of return on the Property. The written record clearly demonstrates that the Property does not have sufficient frontage on any public or private road to permit subdivision for alternative uses, and the Property's unique shape precludes any additional use of the parcel other than the Project. The denial also deprives Plaintiff of any beneficial use of its leasehold.

117.   Moreover, as set forth above, the property is unique and there is no evidence in the record demonstrating how height alone would alter the essential character of the locality.

118.   Third, Plaintiff provided extensive and unrefuted evidence of Verizon's significant coverage gap and lack of alternative feasible methods to satisfy that coverage gap.

119.    The Appeals Board did not gather or submit any data to dispute Plaintiff's evidence. Indeed, during its deliberations, the Appeals Board acknowledged that Plaintiff demonstrated a significant coverage gap, that no feasible alternative location exists within the 300-Yard Restriction to close that gap, and that Plaintiff would suffer economic injury if forced to relocate to an inadequate site.

120.    The Written Decision eschews the actual factual evidence in the written record and rests instead on opinions that are speculative, unsupported by the evidence, and contrary to the substantial evidence in the record.

121.    The written record does not contain substantial evidence that would lead an objective and reasonable person to deny the Application.

122.    The Written Decision is in violation of and preempted by 47 U.S.C. § 332(c)(7)(B)(iii) and must be set aside and enjoined by the Court. Further, this Court should exercise its equitable power to issue an order that the Project is permitted at the Property and directing: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resubmission of its site plan application, and (2) the Town to issue all other local permits and approvals required to construct and operate the Project.

## Count IV

**Maine Rule 80B –
The Appeals Board Abused its Discretion and Committed an Error of Law
by Failing to Consider Whether its Denial Constituted an Effective Prohibition of Wireless
Services**

123.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

124.    The Appeals Board abused its discretion and committed an error of law, and the Written Decision should be declared null and void. *Mack v. Town of Cape Elizabeth*, 463 A.2d 717, 719 (Me. 1983) (stating that when a court "acts as an appellate court reviewing the action of the

28

[Zoning Board of Appeals], we examine the record developed before the [Zoning Board of Appeals] to determine if it abused its discretion, committed an error of law or made findings not supported by substantial evidence.").

125.    First, the 300-Yard Restriction is preempted by the TCA and is in violation of 30-A M.R.S.A. § 3012 ("A municipality may not adopt or enforce any ordinance or regulation that is preempted by a Federal Communications Commission regulation that states that local regulations that involve placement, screening or height of radio antennas based on health, safety or aesthetic considerations must be crafted to reasonably accommodate amateur radio communications and to represent the minimum practicable regulation to accomplish the municipality's legitimate purpose.").

126.    Second, the Appeals Board abused its discretion and committed an error of law by failing to consider whether its denial constituted an effective prohibition of wireless services.

127.    The Appeals Board acknowledged that Plaintiff demonstrated a significant coverage gap and that no feasible alternative location exists within the 300-Yard Restriction to close that gap. Thus, the Appeals Board found that Plaintiff met the elements of an effective prohibition and should have analyzed whether its denial violated federal law.

128.    The Appeals Board and the Town Attorney contended that *Vertex Towers LLC v. Town of York*, precluded the Appeals Board from determining whether its denial constituted an effective prohibition of wireless services. 2023 WL 4868097, at *7 (D. Me. 2023). This is a misreading of the case. In *Vertex*, the Court reviewed whether the Town of York Zoning Board of Appeals' conclusions under state law were supported by substantial evidence, which is subject to a different standard than effective prohibition.  The Court correctly noted that a board is not required to consider effective prohibition when determining whether substantial evidence

supports a denial. *Vertex* does not, however, stand for the proposition that once a board denies an application in accordance with the relevant standards set forth by state and local law, the board is then precluded from separately considering whether the denial constitutes an effective prohibition.  To find otherwise is an inefficient use of town resources and places unnecessary burdens on the judicial system.

129.    The Appeals Board abused its discretion and committed an error of law by failing to consider whether its denial constituted an effective prohibition of wireless services, and the Written Decision must be set aside and enjoined by the Court. Further, this Court should exercise its equitable power to issue an order that the Project is permitted at the Property and directing: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resubmission of its site plan application, and (2) the Town to issue all other local permits and approvals required to construct and operate the Project.

**WHEREFORE**, by reason of the foregoing Counts, Plaintiff respectfully requests entry of a judgment and order as follows:

1.      Granting expedited review of the matters set forth in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

2.      On the First Count, a judgment declaring that: (1) the Appeals Board has effectively prohibited the provision of personal wireless services in violation 47 U.S.C. § 332(c)(7)(B)(i)(II) of the TCA and the Written Decision is therefore void and invalid; (2) the Project is permitted at the Property; and (3) the Town may consider whether a denial is an effective prohibition in violation of the TCA in making a final decision on an application for a wireless telecommunications facility. Further, this Court should exercise its equitable power to order: (1) the Planning Board to issue site plan approval necessary for the construction of the

Project within thirty (30) days of Plaintiff's resubmission of its site plan application; (2) the Town to record the site plan and the permission of the Project at the Property in the Lincoln County Registry of Deeds (consistent with Ordinance Chapter XVI(A)(6) and (R)(8)); and (3) the Town to issue all other local permits and approvals required to construct and operate the Project.

3. On the Second Count, a judgment declaring that: (1) the 300-Yard Restriction effectively prohibited the provision of personal wireless services in violation 47 U.S.C. § 253(a) of the TCA and the 300-Yard Restriction is therefore void and invalid; (2) the Project is permitted at the Property; and (3) the Town may consider whether a denial is an effective prohibition in violation of the TCA in making a final decision on an application for a wireless telecommunications facility. Further, this Court should exercise its equitable power to order: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resubmission of its site plan application; (2) the Town to record the site plan and the permission of the Project at the Property in the Lincoln County Registry of Deeds (consistent with Ordinance Chapter XVI(A)(6) and (R)(8)); and (3) the Town to issue all other local permits and approvals required to construct and operate the Project.

4. On the Third Count, a judgment declaring that: (1) the Written Decision was illegal as it was not based on substantial evidence contained in the written record in violation of the TCA; and (2) the Project is permitted at the Property. Further, this Court should exercise its equitable power to order: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resubmission of its site plan application; (2) the Town to record the site plan and the permission of the Project at the Property in the Lincoln County Registry of Deeds (consistent with Ordinance Chapter XVI(A)(6) and

31

(R)(8)); and (3) the Town to issue all other local permits and approvals required to construct and operate the Project.

5.      On the Fourth Count, a judgment declaring that: (1) the 300-Yard Restriction violates 30-A M.R.S.A. § 3012; (2) the Appeals Board abused its discretion and committed an error of law and the Written Decision should be declared null and void; and (3) the Project is permitted at the Property. Further, this Court should exercise its equitable power to order: (1) the Planning Board to issue site plan approval necessary for the construction of the Project within thirty (30) days of Plaintiff's resubmission of its site plan application; (2) the Town to record the site plan and the permission of the Project at the Property in the Lincoln County Registry of Deeds (consistent with Ordinance Chapter XVI(A)(6) and (R)(8)); and (3) the Town to issue all other local permits and approvals required to construct and operate the Project.

6.      Awarding Plaintiff its costs, expenses, and attorney fees, and any and all other damages and interest to which Plaintiff is lawfully entitled, together with such other and further relief as the Court deems just and proper.

Dated:   February 24, 2026                          NIXON PEABODY LLP

By: s/ W. Daniel Deane
W. Daniel Deane (ME Bar No. 005508)
900 Elm Street, 14th Floor
Manchester, NH 03101-2031
(603)-628-4047
(866)-947-1243
ddeane@nixonpeabody.com
  and
Laurie Styka Bloom, Esq.
 (pro hac vice certification forthcoming)
40 Fountain Plaza, Suite 500
Buffalo, NY  14202
(716) 853-8102
lbloom@nixonpeabody.com

Attorneys for Plaintiff

32